UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        CRIMINAL NO. 16-20060
                              HON. DENISE PAGE HOOD

v.

PHILLIP ANTHONY WHITE,

        Defendant.
_____/

**ORDER DENYING DEFENDANT'S
MOTION TO SUPPRESS [#32]**

**I.    BACKGROUND**

On January 21, 2016, a Complaint was filed against Defendant Phillip Anthony White ("White"). (Doc # 1) On September 16, 2015, White was charged by Indictment with Carjacking (Count I) and Use of a Firearm During a Crime of Violence (Count II). (Doc # 8) Pursuant to a Stipulated Order, a jury trial is set for March 21, 2017. (Doc # 25)

The charges against White relate to a carjacking that took place shortly before 5:00 a.m. on January 15, 2016 at a Clark gas station on Morang in Detroit. The victim ("Victim") pulled his 2008 Ford Taurus into the gas station and entered the store, leaving his car running. According to the Government, White and another male approached the vehicle. White's companion got into the driver's seat

1

of Victim's vehicle and began to drive out of the station while White stood outside the vehicle. Victim came out of the store and ran towards his car yelling. White then aimed a .40 caliber handgun in the direction of Victim and fired a shot. Victim was not hit and ran back into the gas station while White and his companion drove away in his vehicle.

On January 19, 2016, while conducting an unrelated homicide investigation, the Detroit Police Department executed a search warrant at 10337 Somerset Street in Detroit. Police happened to find Victim's 2008 Ford Taurus in the driveway. Police found White inside the residence in possession of the keys to the stolen vehicle. Police also found a .40 caliber handgun in White's bedroom, along with a .22 caliber rifle. Inside the stolen vehicle, police found shell casings to a .45 caliber bullet and a .40 caliber bullet. Victim's description of the man who shot at him and the surveillance video from the Clark gas station matched White's likeness. White was arrested and interviewed by Detroit Police.

This matter is presently before the Court on Defendant's Motion to Suppress Defendant's Statements (Doc # 32) filed on December 20, 2016. The Government filed a Response on January 5, 2017. (Doc # 35) White seeks to suppress his confession arguing that it was involuntary given his history of substance-induced blackouts and consumption of alcohol and seven to eight Xanax pills per day.

The Court held an evidentiary hearing on February 2, 2017. The Court heard and has considered testimony from White. The Court has also reviewed and considered the documentary and video exhibits introduced at the hearing.

## II.  FINDINGS OF FACT

White testified that he is 24 years old and has been taking Xanax pills since he was 18 years old to get high. At first, he would only take one Xanax pill. Now he takes six Xanax pills in order to achieve the higher effect that he desires. White also began taking one or two Percocet pills along with the Xanax pills when he was 20 years old in order to enhance the effect of the Xanax. White testified that these drugs help to relax his mind and give him a good feeling and sometimes makes him forget things. He testified that he can interact and have conversations with family and friends while on these drugs, but that he cannot always understand everything. He testified that he sometimes drives while on these drugs. White testified that he has diagnoses of Panic Disorder with Agoraphobia, Bipolar II Disorder, Attention Deficit Hyperactivity Disorder, and Major Depression. White testified that he has a ninth grade education and can read and write.

White testified that he ingested six Xanax pills and two Percocet pills early in the morning between 8:00 and 9:00 a.m. on January 19, 2016. White was arrested later that day and was first interviewed by Detroit Police shortly after 4:00 p.m. that same day. Gov't's Exh. 4. White read aloud and initialed next to each of

his *Miranda* rights, at one point asking for and receiving clarification on his rights. *Id.*; Gov't's Exh. 3. The video of the interview shows that White understood and was able to answer open-ended questions. White was able to provide lengthy responses and volunteered information. He spoke in responsive full sentences that were not far afield. White appeared oriented to place and time and recalled that he had been at 10337 Somerset Street for four days prior to his arrest. White did not indicate that he took drugs that were affecting his ability to answer questions.

On January 20, 2016, FBI Special Agent George Reinerth and a Detroit Police Officer conducted a separate videotaped interview of White. Gov't's Exh. 1. The interview began at approximately 5:47 p.m. and ended at approximately 7:26 p.m., lasting about an hour and 40 minutes. *Id.* The officers offered White a bathroom break as well as water several times, and White was not handcuffed. *Id.* At this point, White had been in custody for over 24 hours and had not taken Xanax or Percocet for over 32 hours. White executed a *Miranda* waiver after reading aloud and initialing each of his rights. *Id.*; Gov't's Exh. 2.

During the interview, White explained that, on January 15, 2016, he and his companion, "BB," agreed to steal a car and sell it as a means to get money. Gov't's Exh. 1. BB told White to bring a gun because they might need it. *Id.* White brought his .40 caliber Smith and Wesson handgun and went to the Clark gas station on Morang with BB. *Id.* They took Victim's 2008 Ford Taurus, and

4

White admitted that he fired a single shot from his handgun at Victim when Victim approached the vehicle. *Id.* White first stated that he fired the shot upward in the air, but he later admitted that his arm was at a lower angle when he shot. *Id.* White maintained that he did not shoot directly at Victim. The surveillance video shows that the shooter is facing Victim at the time of the shot, and that Victim reacts to the shot as if the gun had been aimed in his direction, putting his hands up and running away. (Doc # 34, Pg ID 78 at 4:54:50 a.m.) White explained that BB drove them both away to an unknown address, that BB exited the vehicle, and that White drove the vehicle to 10337 Somerset Street and changed the license plate. Gov't's Exh. 1. White stated that he was staying at that address with other people, and that the residents maintained three "house guns" (including the .40 caliber Smith and Wesson used during the carjacking). *Id.* White admitted that he had the key to Victim's 2008 Ford Taurus in his pocket and that the .40 caliber Smith and Wesson was in his room when Detroit Police took him into custody. *Id.* White stated that he previously earned money selling marijuana and borrowing money from family. *Id.* He stated that he participated in the carjacking to make money because he was no longer selling marijuana. *Id.*

White testified that he does not recall the officers making any threats or promises during the January 20, 2016 interview, or forcing him to answer questions in a certain way. A review of the video confirms that the officers did not

make any threats or promises. *Id.* White testified that he does not recall any mistreatment on the part of the officers on January 19, 2016 or on January 20, 2016. White testified that he did not understand his *Miranda* rights and could not focus on January 19, 2016 or on January 20, 2016 because he was high on Xanax and Percocet. He testified that he cannot recall if his mind was any better on January 20, 2016 than it was on January 19, 2016 because he was high. Upon review of the videos of both interviews, there is no indication that White was confused, disoriented, or that he experienced a blackout. At the hearing, White testified that he was not aware that the interviews were videotaped, and he identified himself in the videos of both interviews.

In May 2016, White retained a forensic psychologist and shared the report with the Government. The report diagnosed White with Panic Disorder with Agoraphobia, Major Depressive Disorder, ADHD, and a pattern of heavy substance abuse. The report concluded that there were no concerns regarding White's adjudicative competency.

**III. ANALYSIS**

White argues that his intoxication is an important factor to be considered by the Court when considering the totality of the circumstances for purposes of the evidentiary prohibition on involuntary statements. White argues that his statements during the FBI interview were involuntary and should be suppressed.

The Government responds that White has not alleged any particularized facts regarding the circumstances of his confession, nor has White cited any law, to support his contention that suppression would be warranted on the basis of his intoxication or a general substance abuse problem. The Government notes that White makes no argument, nor does he offer any facts that could support an argument, that the police coerced White's confession in any way. The Government argues that White's Motion should be denied as a matter of law.

In the Sixth Circuit,

> [i]n determining whether a confession has been elicited by means that are unconstitutional, this court looks at the totality of the circumstances concerning whether a defendant's will was overborne in a particular case. Factors to consider in assessing the totality of the circumstances include the age, education, and intelligence of the accused; whether the accused has been informed of his constitutional rights; the length of the questioning; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as deprivation of food or sleep.

*Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (internal quotations and citations omitted). "If the police misconduct at issue was not the crucial motivating factor behind [the accused's] decision to confess, the confession may not be suppressed." *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988) (internal quotations and citations omitted). White cites the Fifth Amendment and *Colorado v. Connelly*, a case in which the Supreme Court made clear that a defendant's

mental condition, by itself and apart from its relation to police coercion, does not dispose of the inquiry into constitutional voluntariness. 479 U.S. 157, 164 (1986). The court in *Connelly* went on to explain that "[t]he sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion. Indeed, the Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion." *Id.* at 170 (internal quotations and citations omitted).

      Even accepting White's testimony that he was high on Xanax and Percocet on January 20, 2016 such that he could not understand what was happening during the interview, this condition by itself cannot support a conclusion that White's confession was involuntary. White does not cite any law indicating otherwise. The Court finds that White was alert and coherent throughout the duration of the January 19, 2016 and January 20, 2016 interviews, and that he understood his *Miranda* rights as well as the substance of the interviews. More importantly, White does not allege that the police coerced him in any way, and such an allegation would not be borne out in the interview videos. Without any police misconduct, "voluntary intoxication would not, in and of itself, result in an involuntary confession." *See United States v. Dragos*, No. 04-80545, 2005 WL 3088345, at *3 (E.D. Mich. Nov. 17, 2005). The Court denies White's Motion to Suppress.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant White's Motion to Suppress [#32] is DENIED.

S/Denise Page Hood<br>
Denise Page Hood<br>
Chief Judge, United States District Court

Dated:  March 15, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 15, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry<br>
Case Manager